**SO ORDERED.**

**SIGNED this 14 day of June, 2012.**

_____
**J. Rich Leonard
United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
WILMINGTON DIVISION

| | |
|---|---|
| IN RE: | |
| KIMBERLY NIFONG MITCHELL, | CASE NO. 11-08880-8-JRL |
| DEBTOR. | CHAPTER 11 |

## ORDER

This matter came before the court on the Bankruptcy Administrator's ("BA") motion to disqualify the debtor's attorney and appoint a chapter 11 trustee. The court also heard a motion to appoint a chapter 11 trustee filed by Brian Keesee, the debtor's ex-husband. A hearing was held on May 7, 2012 in Raleigh, North Carolina.[1]

John Hamilton filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on September 30, 2011. On November 3, 2011, the court entered an order allowing Mr. Hamilton to employ Oliver Friesen Cheek, PLLC ("OFC") as bankruptcy counsel. On November 4, 2011, the debtor executed a North Carolina General Warranty Deed ("warranty deed") conveying two pieces of real property to JP Double H Properties, LLC ("JPDHP"). That

---

[1] This hearing was held in conjunction with the BA's motion to disqualify counsel and Brian Keesee's motion to appoint a trustee in the matter of In re John Hamilton, 11-07491-8-JRL.

same day the debtor executed a North Carolina Gift Deed ("gift deed") conveying one piece of real property to JPDHP. Both deeds were recorded with the Brunswick County Register of Deeds on November 7, 2011. The tax stamps on the warranty deed reflected a sales price of $640,000.00, and the tax stamps on the gift deed reflected a sales price of $0.00.

Although the written documents tend to show otherwise, Mr. Hamilton testified that all three properties were transferred to JPDHP in consideration of $640,000.00. JPDHP and the debtor entered into an offer to purchase sales contract which made no mention of the property conveyed by deed of gift. The Housing and Urban Development ("HUD") statement only mentioned the properties transferred by warranty deed.

Mr. Hamilton testified that the sales price was equal to the fair market value of the properties. In addition, he stated that he was the debtor's listing agent on her real property located in Oak Island, North Carolina and that the debtor's property management company, Better Beach Rentals, Inc., acts as the management company for Mr. Hamilton's rental property. Mr. Hamilton and the debtor are also close personal friends. Mr. Keesee has filed an adversary proceeding under 11 U.S.C. § 727(a)(2) against the debtor alleging this pre-petition transfer was a fraudulent conveyance and preference.

The majority of the sales proceeds were used to pay off the debtor's loan with Branch Banking & Trust Company ("BB&T"). The debtor used the remaining funds, totaling $93,000.00, to pay her divorce attorney, bankruptcy counsel's retainer, and several creditors whom were also related to the debtor ("family creditors"). The family creditors previously loaned the debtor money to purchase three vehicles for the debtor and her two children. The BA raised concerns that two of the vehicles were not titled in the debtor's name until after the BA

2

filed her motion to appoint a trustee.

The debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on November 21, 2011. The debtor filed an application to employ OFC as her bankruptcy counsel on December 22, 2011. The attorney's affidavit attached to the application specifically stated, "[OFC] has had no business, other than professional, with the Debtors, any creditor or other party in interest, or their attorneys or accountants, in connection with this Chapter 11 estate at any time." The affidavit made no mention of OFC's representation of Mr. Hamilton or the JPDHP transaction. The application was allowed on January 9, 2012.

The debtor was not immediately forthcoming to the court in regard to the JPDHP transaction. The debtor did not disclose the JPDHP transaction at the BA intake session on December 7, 2011, nor did she make reference to the transaction in her original schedules and statements which were filed on December 15, 2011. Additionally, the debtor did not disclose the JPDHP transaction at the § 341 meeting on December 19, 2011. Mr. Hamilton accompanied the debtor to the § 341 meeting to lend support and advice, but did not mention the transaction.

The JPDHP transaction was finally disclosed to the court and the BA on January 9, 2012, when the debtor filed an amendment to her statement of financial affairs. Mr. Hamilton claims to have notified OFC of the transaction around when it took place. In response to questions about the JPDHP transaction, OFC sent the BA two emails detailing the transaction, one on February 6, 2012, and another on February 22, 2012. The February 6 email contained two deeds and explained the JPDHP transaction. The February 22 email contained information about the LLC, including the articles of organization, the settlement statement, appraisals and comparative market analyses of the property, and the commercial lease agreement. This email went on to

3

discuss the history of the LLC and mentioned the names of its members, including Mr. Hamilton, but the email did not disclose or make apparent that OFC, while representing the debtor in her case, was also simultaneously representing Mr. Hamilton.

On or around April 19, 2012, the BA discovered that OFC was simultaneously representing the debtor and Mr. Hamilton and filed motions to disqualify OFC as counsel in both bankruptcy cases. On April 20, 2012, after the BA filed its motions, OFC filed an amended attorney's affidavit which stated that OFC inadvertently filed the wrong attorney affidavit on December 22, 2011. The original affidavit that OFC intended to file stated, "[OFC] also represents John Hamilton in a Chapter 11 proceeding, Case No.: 11-07491-8-JRL. Mr. Hamilton is the Debtor's listing agent on the Debtor's real property located at 1108 W. Yacht Dr. The Debtor's property management company, Better Beach Rentals, Inc. acts as the management company for Mr. Hamilton's rental real property." This affidavit made no mention of the JPDHP transaction nor of Mr. Hamilton's involvement.

## DISCUSSION

### APPOINTMENT OF A CHAPTER 11 TRUSTEE

The BA contends that the debtor's pre-petition and post-petition fraudulent conduct constitutes cause for the court to appoint a trustee. Specifically, the debtor acted fraudulently with regard to her transaction with Mr. Hamilton, her failure to disclose the transaction, and her paying family members pre-petition. Mr. Keesee argues that the JPDHP transaction was fraudulent and made with the intent to hinder, delay and defraud creditors of the debtor.

The court is required, upon the request of a party, to appoint a trustee any time after the case commences and before the confirmation of the plan for cause. 11 U.S.C. § 1104 (2006).

Pursuant to § 1104(a) of the Bankruptcy Code, cause includes, "fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by the current management, either before or after the commencement of the case, or similar cause." Id. § 1104(a)(1). "As this court recently reiterated, '[t]he appointment of a trustee in a chapter 11 case is an extraordinary remedy, and there is strong presumption in favor of allowing the debtor to remain in possession.'" In re Smith, Case No. 11-08865-8-JRL (Bankr. E.D.N.C. May 21, 2012) (Leonard, J) and In re Piedmont Center Investments, LLC, Case No. 11-06178-8-JRL, 2011 WL 5903398 (Bankr. E.D.N.C. Sept. 8, 2011) (Leonard, J) (quoting In re Tanglewood Farms, Inc. of Elizabeth City, No. 10-06719-8-JRL, 2011 Bankr. LEXIS 624, at *4–5 (Bankr. E.D.N.C. Feb. 10, 2011) (Leonard, J) (citing In re Heck's Props., 151 B.R. 739, 756 (S.D. W. Va. 1992))).

It is within the discretion of the court to determine whether conduct constitutes cause. Committee of Dalkon Shield Claimants v. A.H. Robins Co., 828 F.2d 239, 242 (4th Cir. 1987). Specifically, the court must determine whether the "conduct shown rises to a level sufficient to warrant the appointment of a trustee." Id. The court must construe § 1104(a)(1) in a way that is in harmony with the rest of the Bankruptcy Code, and "due consideration must be given to the various interests involved in the bankruptcy proceeding." Id. As well, in circumstances where fraud or mismanagement is present, the legislative history of § 1104(a)(1) suggests that the court should "balance the benefit to be gained from such an appointment against the detriment to the reorganization effort and the rights of the debtor that may result from such an appointment." 7 COLLIER ON BANKRUPTCY ¶ 1104.02[3][b] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.). However, if the court in its discretion determines that cause exists, the statute mandates that a trustee be appointed. See 11 U.S.C. § 1104(a) (stating that where cause is found, "the court *shall*

5

order the appointment of a trustee.") (emphasis added).

The debtor's conduct in this case does not have the requisite indicias of fraud to warrant a finding of cause. While not disclosed at the out-set of the case, the JPDHP transaction was disclosed in time for interested parties to investigate the transaction and take a position based on that investigation. The debtor accurately amended her schedules within a few weeks after the § 341 meeting. The court notes that this case is not so different from many other cases where the debtor has multiple transactions to disclose and thus is continually amending schedules in the early months of the case.

In addition, the debtor paid legitimate creditors, albeit family members, in the weeks prior to filing for bankruptcy. Once the debtor realized this was prohibited she took steps to recover the funds paid to these creditors pre-petition. Therefore the motion to appoint a chapter 11 trustee is **DENIED**.

## DISQUALIFICATION OF DEBTOR'S COUNSEL

The BA contends that the JPDHP transaction gives rise to a colorable claim that the transfer was a fraudulent conveyance which creates a conflict of interest for OFC.

Subject to the court's approval, § 327(a) of the Bankruptcy Code authorizes the trustee to employ attorneys "that do not hold or represent an interest adverse to the estate, and that are disinterested persons[.]" 11 U.S.C. 327(a). Because the debtor in possession, with some limitation, is granted the same powers as a trustee, this applies to debtors in possession in chapter 11 cases. See 11 U.S.C. § 1107(a) ("[A] debtor in possession shall have all the rights, . . . and shall perform all the functions and duties . . . of a trustee serving in a case under this chapter.").

Section 327 does not immediately disqualify a debtor's attorney whom is also employed by a creditor to the debtor. See 11 U.S.C. § 327(c); see also Johnson v. Richter, Miller & Finn (In re Johnson), 312 B.R. 810, 819 (E.D. Va. 2004) ("§ 327(c), which governs the employment of an attorney or professional who represents a creditor, creates a limited exception to [§ 327(a)]"). Instead, a person is not disqualified "unless there is an objection by another creditor or the United States trustee." 11 U.S.C. § 327(c). In the event of an objection, "the court shall disapprove such employment if there is an actual conflict of interest." Id.

An actual conflict of interest is not defined in the Bankruptcy Code. See 11 U.S.C. § 101; In re Johnson, 312 B.R. at 822. Nor have courts set "bright line rules" as to when an actual conflict exists. In re Johnson, 312 B.R. at 822. However, courts have concluded, "an alleged conflict of interest is 'actual' and warrants disqualification under § 327(c) if there is 'active competition between two interests, in which one interest can only be served at the expense of the other.'" Id. (quoting In re BH & P, Inc., 103 B.R. 556, 563 (Bankr. D.N.J. 1989), aff'd 949 F.2d 1300 (3d Cir. 1991)).

When a law firm represents a debtor's estate and an entity that may face liability for a fraudulent conveyance, the firm has an actual conflict of interest. In re Adam Furniture Indus., Inc., 158 B.R. 291, 300 (Bankr. S.D. Ga. 1993). In Adam Furniture, the law firm representing the debtor and its principal received fees from the debtor and from entities that its creditors accused of receiving preferential transfers and fraudulent conveyances. Id. at 294, 300–01. The court disqualified the law firm holding, "[i]n any fraudulent conveyance or preferential transfer dispute, the opposing parties have adverse interests because each is asserting that it has the proper right to certain assets." Id. at 300. The court went on to state:

7

> The law firm was not ignorant of these allegations or of the facts alleged to support them, and although no preference or fraudulent conveyance action has yet been taken, the potential for such actions and the requirement that the debtor's counsel evaluate such claims is already present. Characterizing this as merely a potential conflict of interest rather than actual does not resolve the law firm's dilemma.

Id. at 300–01. The court noted, "[i]f there is even a possible future conflicting interest present that could prevent the counsel from fulfilling his duties, that conflict is 'actual.'" Id. at 301.

Here, like Adams Furniture, there is a possible future conflict that could prevent OFC from fulfilling its duties. In the two weeks prior to filing, the debtor was involved in a transaction with Mr. Hamilton, another one of OFC's clients, albeit through an LLC in which he is a 50% owner. The court finds that there may be legal defects in the way the JPDHP deal was structured that need to be seriously investigated.

First, the court is not convinced that the sale price was fair market value. OFC did not present evidence that they independently researched the value of the properties. The only evidence of value came from Mr. Hamilton, who is clearly interested and also one of OFC's clients. The debtor stated in her divorce papers, six months prior to the sale, that the property was worth 1.5 times more than the sale price used in the JPDHP transaction. Thus OFC owed a duty to the debtor to fully investigate the nature of the transaction and file an action to recover for fraudulent conveyance if necessary. This obligation is at odds with OFC's duty not to undo the transaction in Mr. Hamilton's case.

Furthermore, there is nothing in writing that ties the deed of gift into the sale. These facts create a colorable fraudulent conveyance claim. Therefore, the parties have potential adverse interests. This presents an actual conflict of interest. OFC is disqualified from representing the debtor.

Based on the foregoing, the BA and Mr. Keesee's motion to appoint a chapter 11 trustee is **DENIED**.  The BA's motion to disqualify OFC in this case is **ALLOWED**.

**END OF DOCUMENT**